```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                       COLUMBUS DIVISION
```

EAGLE 6 TECHNICAL SERVICES, LLC,   *

    Plaintiff,                     *

vs.                                *

VICTOR NATIONAL HOLDINGS, INC.     *    CASE NO. 4:20-CV-183 (CDL)
and G.W. HANDAL DESIGN AND
CONSULTING, LLC,                   *

    Defendants.                    *

O R D E R

This action arises from a simple contractual dispute that the parties have attempted to elevate to something more complicated. Counsel has responded with motions to dismiss designed to whittle down the claims. As explained in the remainder of this order, the following claims have been plausibly stated in Plaintiff Eagle 6 Technical Services, LLC's amended complaint and Defendant Victor National Holdings, Inc.'s counterclaim: (1) Eagle 6's claims against Victor National for breach of contract, account stated, tortious interference, unjust enrichment, promissory estoppel, and conversion of equipment and intellectual property; and (2) Victor National's counterclaims for tortious interference and attorney's fees. National Holdings' and Eagle 6's motions to dismiss (ECF Nos. 28 & 33) are otherwise granted, and G.W. Handal Design and Consulting, LLC's motion to dismiss (ECF No. 29) is granted.

DISCUSSION

I. **Victor National's Motion to Dismiss (ECF No. 28)**

A. Account Stated Claim

Eagle 6 asserts a claim for "account stated" against Victor National.  "A suit on open account is available as a simplified procedure to the provider of goods and services where the price of such goods or services has been agreed upon and 'where it appears that the plaintiff has fully performed [its] part of the agreement and nothing remains to be done except for the other party to make payment.'" *Five Star Steel Constr., Inc. v. Klockner Namasco Corp.*, 524 S.E.2d 783, 785 (Ga. Ct. App. 1999) (alteration in original) (quoting *Haas v. Jaffe*, 163 S.E. 226, 227 (Ga. Ct. App. 1932)). "An account stated is an agreement by which persons who have had previous transactions with each other fix the amount due in respect to such transactions and the one indebted promises payment of the balance."  *Lawson v. Dixie Feed & Seed Co.*, 145 S.E.2d 820, 821–22 (Ga. Ct. App. 1965).  An account may be converted from an open account to an account stated if either (1) there is an express agreement as to the amount and a promise to pay or (2) there is an implied agreement, such as when an "account is rendered to the debtor and he fails to object to it."  *Id.* at 822.

Victor National points out that "when there is a dispute that goes to either assent to the services, terms of the contract, what work was performed, the quality of the performance, or cost, then

2

suit on account is not the proper procedure for suit, because there is a factual issue other than nonpayment on the account." *Five Star Steel Constr., Inc.*, 524 S.E.2d at 785.  Relying on the factual allegations in its counterclaim, Victor National asserts that account stated is an improper procedure because there are factual disputes regarding the existence of a valid contract, the terms of the contract, and what work was performed.  At this stage of the litigation, though, the Court must consider whether the allegations in Eagle 6's complaint, taken as true, establish an account stated claim.  They do.  Eagle 6 alleges that Eagle 6 provided goods and services to Victor National, Eagle 6 submitted invoices to Victor National, Victor National did not object to the invoices, Victor National repeatedly promised to pay the invoices, and Victor National failed to pay.  The complaint states a claim for account stated.

    B.    <u>Tortious Interference Claim</u>

Eagle 6's tortious interference with contract claim is based on its contention that Victor National induced Eagle 6's subcontractors and employees to sever their contracts with Eagle 6. To recover on a claim of tortious interference with contract, a plaintiff must prove: "(1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or

third part[y] to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff." *Mabra v. SF, Inc.* 728 S.E.2d 737, 739–40 (Ga. Ct. App. 2012) (alteration in original) (quoting *Tidikis v. Network for Medical Commc'ns & Rsch., LLC*, 619 S.E.2d 481, 486 (Ga. Ct. App. 2005)).

To establish that the Defendant acted without privilege, "the plaintiff must show that the defendant was a stranger to the contract or business relation at issue." *Id.* at 740. "Under the so-called 'stranger doctrine,' 'only a stranger to both the contract at issue and the business relationship giving rise to and underpinning the contract may be liable for tortious interference [with the contract or the relationship].'" *Id.* (alteration in original) (quoting *Perry Golf Course Dev., LLC v. Hous. Auth. of the City of Atlanta*, 670 S.E.2d 171, 175 (Ga. Ct. App. 2008). "One is not a stranger to the contract just because one is not a party to the contract . . . ." *Id.* (quoting *Atlanta Mkt. Ctr. Mgmt., Co. v. McLane*, 503 S.E.2d 278, 282 (Ga. 1998)). "Those who have a direct economic interest in or would benefit from a contract with which they are alleged to have interfered (even though not intended third-party beneficiaries of the contract) are not strangers to the contract and cannot have tortiously interfered." *Id.* And, the parties to "an interwoven contractual arrangement are [not strangers and therefore] not liable for tortious interference with

4

any of the contracts or business relationships." *Id.* (alteration in original) (quoting *McLane*, 503 S.E.2d at 283-84).

Here, Eagle 6 alleges that it hired three employees "to facilitate performance of the services to [Victor National] under the Prime Contract." Am. Compl. ¶¶ 24, 26-27, ECF No. 24. Eagle 6 further alleges that it retained "certain sub-contractors and employed personnel to provide services" to Victor National under the Prime Contract. *Id.* ¶ 23. Victor National was not a party to the employment contracts or the contracts with the sub-contractors. Although the alleged purpose of the contracts was to provide services to Victor National, the Court cannot conclude at this pleading stage that, based solely upon this alleged purpose, Victor National was not a stranger to the employment contracts or the subcontracts and thus cannot be liable for tortious interference. Victor National's motion to dismiss this claim is therefore denied.

### C. Unjust Enrichment Claim

As an alternative to its breach of contract claim against Victor National, Eagle 6 alleges a claim for unjust enrichment. Under Georgia law, "unjust enrichment applies when as a matter of fact there is no legal contract . . ., but where the [defendant] has been conferred a benefit by the [plaintiff] which the benefited party equitably ought to return or compensate for." *Smith v. McClung*, 452 S.E.2d 229, 232 (Ga. Ct. App. 1994) (alterations in

original) (quoting *Ga. Tile Distribs., Inc. v. Zumpano Enters., Inc.*, 422 S.E.2d 906, 908 (Ga. Ct. App. 1992)). Victor National's sole basis for seeking dismissal of the unjust enrichment claim is that Eagle 6 also makes a breach of contract claim. "An unjust enrichment theory does not lie where there is an express contract." *Pryor v. CCEC, Inc.*, 571 S.E.2d 454, 456 (Ga. Ct. App. 2002). Eagle 6's unjust enrichment claim, however, is clearly an alternative to its breach of contract claim, and it is set out in a separate count in the amended complaint. A party may maintain alternative and inconsistent claims, so, at this point in the litigation, the Court declines to dismiss the unjust enrichment claim simply because Eagle 6 also brings an alternative breach of contract claim.

D.  Promissory Estoppel Claim

Eagle 6 makes a promissory estoppel claim against Victor National. To prevail on this claim, Eagle 6 must show that Victor National made certain promises, that Victor National should have expected Eagle 6 to rely on those promises, Eagle 6 "did in fact rely on such promises" to its detriment, and "injustice can be avoided only by enforcement of the promise." *Sparra v. Deutsche Bank Nat. Tr. Co.*, 785 S.E.2d 78, 83 (Ga. Ct. App. 2016) (quoting *Canterbury Forest Assn. v. Collins*, 532 S.E.2d 736, 739 (Ga. Ct. App. 2000)). Victor National professes that it has no idea what factual allegations form the basis of Eagle 6's promissory estoppel

claim, but it is not difficult to discern. Eagle 6 alleges that Victor National failed to pay Eagle 6 for equipment and services despite repeated promises to do so. To induce Eagle 6 to continue providing services to Victor National, Victor National's agent promised to issue stock in Victor National to Eagle 6. Am. Compl. ¶¶ 30-31, 80. Victor National reasonably expected Eagle 6 to rely on this promise. *Id.* ¶ 81. Relying on this promise, Eagle 6 continued providing services to Victor National instead of ceasing to perform work for which it was not being paid, but Victor National never issued stock or made payments to Eagle 6. *Id.* ¶¶ 32-34, 82. The Court is satisfied that the amended complaint states a claim for promissory estoppel.

E.  Conversion Claim

Eagle 6 also asserts a claim for conversion against Victor National. To establish a conversion claim in cases where the defendant appears to have lawfully come into possession of the plaintiff's property, a plaintiff must prove: "(1) title to the property or the right of possession[;] (2) actual possession in the other party[;] (3) demand for return of the property[;] and (4) refusal by the other party to return the property." *Exec. Cars, LLC v. W. Funding II, Inc.*, 826 S.E.2d 370, 378 (Ga. Ct. App. 2019) (alterations in original) (quoting *Bo Phillips Co. v. R.L. King Properties*, 783 S.E.2d 445, 449 (Ga. Ct. App. 2016)). Victor National contends that Eagle 6 did not make any factual allegations

to support its conversion claim. In response, Eagle 6 argues that it is, under the Prime Contract, the exclusive owner of all works created for the project. But the Prime Contract states that the works generated would be "sole and exclusive property of Client"—Victor National. Am. Compl. Ex. A, Commercial Healthcare Security Project Contract ("Prime Contract") § C.2, ECF No. 24-1 at 7. So Eagle 6 did not plead that it had title to the works created under the Prime Contract and thus cannot state a conversion claim as to that property. To the extent that Eagle 6's conversion claim is based on works generated for the Prime Contract, it is dismissed. But Eagle 6 also alleges that Victor National received and misappropriated for its own use certain equipment that Eagle 6 purchased, as well as Eagle 6's proprietary intellectual property. Am. Compl. ¶¶ 28, 48, 86.[1] Although Eagle 6 demanded return of this property, Victor National refused. The Court is satisfied that Eagle 6 states a conversion claim for conversion of its equipment and intellectual property. The motion to dismiss this portion of the conversion claim is denied.

F.   Fraud in the Inducement Claim

Finally, Eagle 6 asserts a fraudulent inducement claim against Victor National. To establish such a claim, Eagle 6 must establish: "(1) a false representation made by the defendant; (2)

---

[1] The Court notes that "[t]angible personalty or specific intangible property may be the subject for an action for conversion. *Taylor v. Powertel, Inc.*, 551 S.E.2d 765, 769 (Ga. Ct. App. 2001).

8

scienter; (3) an intention to induce the plaintiff to enter into a contract based upon the false representation; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff as a result of the fraud." *Pinnock v. Kings Carlyle Club Apartments, LLC*, 819 S.E.2d 515, 518 (Ga. Ct. App. 2018). "The plaintiff's failure to establish even one of these elements entitles the defendant to summary adjudication." *Id*. Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). So, to satisfy Rule 9(b), a plaintiff must set forth "(1) the precise statements, documents, or misrepresentations made; (2) the time, place and person responsible for the statement; (3) the content and manner in which these statements misled [the plaintiff]; and (4) what the defendants gained by the alleged fraud." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1128 (11th Cir. 2019) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010)).

Here, Eagle 6's amended complaint does not clearly allege which representations Victor National made or when, but Eagle 6 suggests in its brief that it relied on misrepresentations in the Prime Contract itself, which it contends Mr. Guillermo Handal signed on behalf of Victor National. Those representations included the promise that Victor National would pay Eagle 6 for its work. "The general rule is that actionable fraud cannot be

9

predicated upon promises to perform some act in the future." *Lively v. Garnick*, 287 S.E.2d 553, 557 (Ga. Ct. App. 1981). "Nor does actionable fraud result from a mere failure to perform promises made." *Id.* If that were the case, then "any breach of a contract would amount to fraud." *Id.* (quoting *Ga. Real Estate Comm. v. James*, 262 S.E.2d 531, 533 (Ga. Ct. App. 1979)). There is an exception—if a promise as to future events was "made with a present intention not to perform." *Id.* But Eagle 6's amended complaint does not clearly allege that when Victor National entered the Prime Contract, it intended not to perform any of its contractual obligations. Thus, Eagle 6's fraudulent inducement claim against Victor National fails and is dismissed.

**II. Handal Design's Motion to Dismiss (ECF No. 29)**

A.   Fraud in the Inducement Claim

Eagle 6 alleges that Mr. Handal executed the Prime Contract on behalf of Victor National. In the alternative, Eagle 6 seems to contend that Handal Design was an agent of Victor National and that Mr. Handal, as an agent of both Handal Design and Victor National, executed the Prime Contract. The allegations are vague and unclear. The gist seems to be that when Mr. Handal signed the Prime Contract on the line under "G.W. Handal Design and Consulting" (which Eagle 6 says was a scrivener's error) Mr. Handal was, as an agent of Handal Design, representing that Handal Design had authority to bind Victor National to the Prime Contract. But

10

there is no allegation of a specific misrepresentation that Mr. Handal made to a representative of Eagle 6 on behalf of Handal Design. Even if there were, there is no specific allegation of how Eagle 6 was harmed by relying on that misrepresentation. If Eagle 6 is arguing that Mr. Handal, by signing the Prime Contract, represented on behalf of Handal Design that Victor National—a separate entity—would perform, there is no clear allegation that Mr. Handal knew at the time that Victor National intended not to perform any of its contractual obligations. For all these reasons, Eagle 6's fraudulent inducement claim against Handal Design fails and is dismissed.

B.  Negligence Claim

In addition to its fraudulent inducement claim, Eagle 6 asserts a negligence claim against Handal Design. In its amended complaint, Eagle 6 summarily alleges the elements of a negligence claim—duty, breach, causation, and damages—but does not clearly articulate a factual basis for the claim. In its brief, Eagle 6 argues that Handal Design had some unidentified duty to Eagle 6 and it breached that duty. In support of this argument, Eagle 6 cites a case that explains the law on negligent performance of a voluntary undertaking: one who undertakes to do an act or perform a service for another must use reasonable care. *Sheaffer v. Marriott Int'l, Inc.*, 826 S.E.2d 185, 188 (Ga. Ct. App. 2019) (affirming grant of summary judgment against the plaintiff because

11

there was no evidence that the defendant undertook any voluntary duty to the plaintiff). Here, there is no allegation that Handal Design undertook a service for Eagle 6 or created any duty for itself with regard to Eagle 6 and the Prime Contract. This claim fails and is dismissed.

### III. Eagle 6's Motion to Dismiss (ECF No. 33)

#### A.   Tortious Interference Claim

Victor National contends that it never entered a contract with Eagle 6 and that the invoices Eagle 6 submitted to Victor National were inflated and fraudulent. Victor National alleges that Eagle 6 knew Victor National had been working on a Series B offering and that Eagle 6 purposely sought to devalue the "potential shares" of Victor National stock in the offering by submitting the fraudulent invoices and initiating this action. Countercl. ¶¶ 28, 30, ECF No. 16. Victor National further alleges that Eagle 6's conduct—concocting a fraudulent contract, submitting false invoices, and bringing this action for millions of dollars in damages—"caused potential investors to fail to enter into the anticipated business relationship . . . by not investing in [Victor National's] Series B offering." *Id.* ¶ 32, 33. Eagle 6 contends that these allegations are not specific enough to state a claim for tortious interference with business relations. The Court, viewing the factual allegations in the counterclaim as true and drawing all reasonable inferences in favor of Victor National,

12

disagrees.  Victor National alleges that Eagle 6, knowing that Victor National was preparing to raise additional capital through a Series B stock offering, dropped a bombshell on the offering by filing a complaint against Victor National that sought extensive damages and was based entirely on lies.  Victor National further alleges that its potential investors did not invest in the Series B offering because of Eagle 6's conduct.  The Court thus declines to dismiss this claim.

    B.    Fraud Claim

Victor National asserts that Eagle 6 intentionally forged a contract, submitted false invoices to Victor National based on that contract, and initiated this action to recover for Victor National's breach of the forged contract.  Victor National also summarily alleges that the Prime Contract "is a forgery, fraud and misrepresentation procured for the purpose of extorting monies from [Victor National] and Mr. Handal."  Countercl. ¶ 44.  These allegations do suggest that Eagle 6 intentionally made false representations to Victor National.  But there is no allegation of justifiable reliance on these false representations—no allegation that Victor National paid a fraudulent invoice or was somehow induced to perform under a forged contract.  Victor National argues that it relied on the representations of Eagle 6's CEO by allowing him to serve on its volunteer advisory board.  But Victor National does not allege that simply putting Eagle 6's CEO on its volunteer

13

advisory board caused it any injury. Rather, the problems started when the Eagle 6 CEO allegedly started forging contracts and submitting false invoices—which Victor National does not allege that it relied on in any way. Accordingly, Victor National's fraud claim fails and must be dismissed.

CONCLUSION

As discussed above, the Court dismisses all of Eagle 6's claims against Handal Design and Eagle 6's claims against Victor National for fraudulent inducement and for conversion based on works generated for the Prime Contract. Eagle 6's claims against Victor National for breach of contract, account stated, tortious interference, unjust enrichment, promissory estoppel, and conversion based on equipment and intellectual property remain pending. The Court dismisses Victor National's fraud claim, but Victor National's claims for tortious interference and attorney's fees remain pending.[2]

The Court previously stayed ruling on the motion to withdraw filed by Defendants' counsel (ECF No. 40). If that motion is granted, Victor National will be unable to represent itself in this action given its status as a corporation. *See Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985) ("The rule is

---

[2] The only basis Eagle 6 offers for dismissing Victor National's claim for attorney's fees is its contention that Victor National's substantive claims must be dismissed. Since Victor National's tortious interference claim survives the motion to dismiss, the claim for attorney's fees does too.

14

well established that a corporation is an artificial entity that can act only through agents, cannot appear *pro se*, and must be represented by counsel."). Without counsel, Victor National faces potential default. Victor National was given several weeks to obtain substitute counsel, and then the deadline was stayed for more time pending a ruling on the motions to dismiss. Victor National shall have one more chance: Victor National shall have 28 days from today's order to secure replacement counsel who shall file an entry of appearance. The Court will readdress the pending motion to withdraw at that time. Victor National's counsel shall send this order to Victor National, informing it of the possibility of default if it fails to retain substitute counsel. The parties shall submit a joint amended proposed scheduling order to the Court within forty-nine days of the date of today's Order.

    IT IS SO ORDERED, this 1st day of September, 2021.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA